255 N.J. Super. 607 (1992)
605 A.2d 1120
MICHAEL S. GAPANOVICH, PLAINTIFF-RESPONDENT,
v.
KOMORI CORPORATION, DEFENDANT-APPELLANT, AND KOMORI PRINTING MACHINERY CO., LTD., ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1992.
Decided April 14, 1992.
*609 Before Judges J.H. COLEMAN[1], BILDER and KEEFE.
Thomas M. Moore argued the cause for appellant (Carpenter, Bennett & Morrissey, attorneys; Thomas M. Moore, on the brief).
Anthony N. Gallina argued the cause for respondent (Anthony N. Gallina, on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
*610 On this appeal we are asked to determine the effectiveness of service of process in Japan on a Japanese corporation by the use of the mail procedure authorized by R. 4:4-4(c). In so doing, we are required to interpret the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (variously Hague Convention or Convention)[2]. Both are questions of initial impression in New Jersey.
Plaintiff has filed a product liability complaint in which he alleges he was injured while using a printing press manufactured by defendant Komori Corporation[3] and sold to plaintiff's employer by defendant Komori America Corporation. According to defendant's affidavits, Komori is a Japanese corporation with no place of business, office, employee, servant or agent authorized to accept service of process in New Jersey, and Komori America is a wholly owned but totally separate and independent subsidiary of Komori.
Plaintiff attempted to serve Komori by serving Komori America at its New Jersey place of business and by mail service in accordance with R. 4:4-4(c) directed to Komori at its place of business in Tokyo. Komori moved in the Law Division to quash the service. In response, plaintiff filed a cross-motion for leave to take the depositions of Mitsuhiko Gotoh, General Manager of Komori's Export Department II, the individual who signed one of Komori's supporting affidavits. Without hearing oral argument, the trial judge entered a R. 1:6-2 order in which he denied Komori's motion to quash the service and granted plaintiff *611 leave to depose Gotoh at plaintiff's attorney's office in Rochelle Park. Komori appeals from both aspects of the order.

The Service of Process
Komori contends that the attempts to serve it by service on its independent subsidiary, Komori America, and by mail service to Komori at its place of business in Japan were both defective. The merit of these contentions requires a consideration of the Hague Convention, an international treaty which has been ratified by both the United States and Japan.
The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. The Convention revised parts of the Hague Conventions on Civil Procedure of 1905 and 1954. The revision was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. [Volkswagenwerk v. Schlunk, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722, 730 (1988)]
The document was designed to establish a system "for the effective, expeditious and inexpensive service of legal documents abroad." Vazquez v. Sund Emba AB, 152 A.D.2d 389, 548 N.Y.S.2d 728, 729 (2 Dept. 1989) quoting the Report of the U.S. Delegation. It provides a mechanism by which a plaintiff authorized to serve process under the laws of its own country can effect service that will give appropriate notice to the party being served and will not be objectionable to the country in which that party is served. See DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 288 (3rd Cir.1981), cert. den., 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981).
As a treaty, the Hague Convention is the supreme law of the land. See U.S. Const. Art. VI, cl. 2; Ackermann v. Levine, 788 F.2d 830, 838 (2nd Cir.1986). When it applies, it overrides state methods of service that are objectionable to the nation in which the process is served. Committee on Federal Courts of the New York State Bar Association, Service of Process Abroad: A Nuts and Bolts Guide, 122 F.R.D. 63, 72 (1989). However, if local law permits local service obviating *612 the need for foreign service, the Hague Convention is inapplicable. See Volkswagenwerk v. Schlunk, supra. In that case, because under Illinois law a domestic subsidiary is a foreign corporation's involuntary agent for service of process, the Supreme Court held that service within that forum on the domestic subsidiary was effective and obviated the need for foreign service. Id. 486 U.S. at 707-708, 108 S.Ct. at 2112-2113. Thus the requirements of the Hague Convention did not apply. Id. at 707-708, 108 S.Ct. at 2112-2113. In New Jersey, such service is not effective; the attempted service on Komori America did not constitute service on Komori. See Charles Gendler & Co., Inc. v. Nippon Elec. Co., 199 N.J. Super. 227, 488 A.2d 1091 (App.Div. 1985), rev. on other grounds, 102 N.J. 460, 508 A.2d 1127 (1986); Pressler, Current N.J. Court Rules, comment to R. 4:4-4(c) at 739 (1992). Therefore, we must consider whether the mail service made in Japan in accordance with our rules is effective under the Hague Convention.
The Hague Convention authorizes a number of alternative methods for serving documents. See Service of Process Abroad, supra, 122 F.R.D. at 70. Plaintiff relies on the provisions of Article 10(a) which state:
Provided the State of destination does not object, the present Convention shall not interfere with 
(a) the freedom to send judicial documents, by postal channels, directly to persons abroad, ....
Japan has not objected. 28 U.S.C.A., Fed.R.Civ.Proc. (West Supplement 1991) at 152. Komori contends in response that Article 10(a) refers to "sending" documents and that "sending" does not include service of process. In making this contention, Komori points to a significant split of authority as to whether Article 10(a) permits mail service. The contrary arguments and the conflicting authorities have been succinctly set forth in Nicholson v. Yamaha, 80 Md. App. 695, 704-710, 566 A.2d 135, 140-142 (1989), cert. den., 318 Md. 683, 569 A.2d 1242 (1990), a decision in which the court concluded that mail service is permitted. In brief, the contra argument is that the term *613 "service" is used throughout the Hague Convention, thus suggesting that the use of the term "send" in Article 10(a) excludes that critical process. See Shoei Kako Co., Ltd. v. Superior Court, 33 Cal. App.3d 808, 820-821, 109 Cal. Rptr. 402, 411 (1973).
Our examination of the authorities convinces us that the more persuasive authority is on the side of those who find that process is among the documents which may be sent by mail under Article 10(a). This is the only construction which will achieve the Convention's stated goal of effective, expeditious and inexpensive service, see Vazquez v. Sund Emba AB, supra,  of providing a simpler way to serve process abroad, see Volkswagenwerk v. Schlunk, supra 486 U.S. at 698, 108 S.Ct. at 2107, 100 L.Ed.2d at 730. See also Societe Nat. Ind. Aero v. U.S. Dist. Court, 482 U.S. 522, 534, 107 S.Ct. 2542, 2550, 96 L.Ed.2d 461, 477-478 (1987).
In adopting the convention, member nations agreed that a liberal interpretation should be given to its terms, see International Service of Process: A Guide to Serving Process Abroad Under the Hague Convention, 39 Okla.L.R. 287, 288 (1986). This accords with the general rule of construing treaties broadly, see Volkswagenwerk v. Schlunk, supra 486 U.S. at 700, 108 S.Ct. at 2108; 1 Restatement of Foreign Relations Law § 325(1) (1986), and with our own practice of construing remedial legislation broadly in a manner which advances the legislative purpose, see State v. Tischio, 107 N.J. 504, 511, 527 A.2d 388 (1987); Cressey v. Campus Chefs, Div. of CVI Service Inc., 204 N.J. Super. 337, 342, 498 A.2d 1274 (App.Div. 1985).
Moreover, interpretation of Article 10(a) as permitting mail service is generally considered the sounder view by those considered to be authoritative in the field. See Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial *614 Documents in Civil or Commercial Matters (1985) at 39;[4] 1 Ristau, International Judicial Assistance (Civil and Commercial) § 4-28 (1984) (referring to the Rapporteur's report on the final text of the convention); 1986 Supplementary Practice Commentary C4-34, 28 U.S.C.A. Fed.R.Civ.P. 4 (West Supp. 1991) at 115; Service of Process Abroad: A Nuts and Bolts Guide, supra, 122 F.R.D. at 79; Hamilton, An Interpretation of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents Concerning Personal Service in Japan, 6 Loy. L.A. Int'l & Comp. L.J. 141 (1983) at 159. It appears that a majority of the courts which have considered the matter have found mail service is permitted. See Hammond v. Honda Motor Co., Ltd., 128 F.R.D. 638, 641 (D.S.C. 1989).
The contrary view, described by Born and Westin in their text, International Civil Litigation in United States Courts (1989) as finely parsing the language of Article 10(a), would in our view undermine the goals of the Hague Convention. The practical effect would be to destroy the concept of mail service and require in every case the use of expensive and cumbersome procedures. In a concurring opinion in Bankston v. Toyota Motor Corp., 889 F.2d 172, 174 (8th Cir.1989), Judge Gibson agreed with the court's acceptance of the view that Article 10(a) did not encompass service of process but expressed his "nagging concern" with the practical effect of the result. He noted that special service of process would cost $800 to $900 and must include a translation of the suit papers in Japanese. Id. at 174. We are satisfied this is not the effective, expeditious and inexpensive service of process intended by the Convention.
Some of the courts which have dealt with this question in the context of a Japanese defendant have considered the fact *615 that Japanese internal law does not permit service of process by mail. See Nicholson v. Yamaha, supra 566 A.2d at 139-140; also McClenon v. Nissan Motor Corp in U.S.A., 726 F. Supp. 822, 825-826 (N.D.Fla. 1989); Suzuki Motor v. Superior Ct. (Armenta), 200 Cal. App.3d 1476, 1480-1481, 249 Cal. Rptr. 376, 379 (4 Dist. 1988). This facet of Japan's local law has led some to conclude that Japan could not have intended to permit or recognize the use of mail service under the Convention. We find the state of Japanese internal law to be irrelevant. We are called upon to construe the Convention and as to that the meaning of Article 10(a) must be the same with respect to all the signatory nations. Their internal laws as to mail service may be, and undoubtedly are, diverse. The meaning of this international treaty must be uniform. If Japan was uncomfortable with Article 10(a), it could simply have declared its objection to Article 10(a) just as it did as to Articles 10(b) and (c). See 28 U.S.C.A. Fed.R.Civ.P. 4 (West Supp. 1991) at 152. According to the Japanese delegation to a Special Commission on the operation of the Conventions on the Service of Documents Abroad and on the Taking of Evidence Abroad, held in 1989, its government takes no position on the matter. See Nicholson v. Yamaha, supra, 566 A.2d at 142. "Japan has made it clear that no objection to the use of postal channels for sending judicial documents to persons in Japan does not necessarily imply that the sending by such a method is considered valid service in Japan; it merely indicates that Japan does not consider it as infringement of its sovereign power." Ibid.
Finally, we note that the defendant does not deny actual notice of the complaint and that the mail service effected in this matter accords with our own notions of justice and due process.

The Deposition
Because it is clear that the depositions were desired only if the service question was resolved adversely to plaintiff, an eventuality which did not occur, the relief ordered exceeds that required by plaintiff.
*616 The denial of the motion to quash service of process is affirmed. The order for the taking of the Gotoh deposition is reversed and vacated.
NOTES
[1] Judge Coleman did not hear oral argument but with consent of counsel has participated in this decision.
[2] For the full text of the Hague Convention see 28 U.S.C.A., Fed.R.Civ.P. 4 (West.Supp. 1991) at 142-147. For a brief history of its background see Vazquez v. Sund Emba AB, 152 A.D.2d 389, 548 N.Y.S.2d 728, 729-731 (2 Dept. 1989).
[3] Defendant Komori Corporation is misnamed in the complaint. We are using the correct names for Komori and its wholly owned subsidiary Komori America Corporation.
[4] The Handbook is published by the Hague Conference on Private International Law and notes that it is a product of "close cooperation between the Governments of these States, through the intermediary of the Permanent Bureau." Handbook at V.