**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4652-17T1

ARVIND BHUT,

    Petitioner-Respondent,

v.

ALUMINUM SHAPES,

    Respondent-Appellant.

_____

Submitted January 17, 2019 – Decided June 10, 2019

Before Judges Simonelli and O'Connor.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2017-23357.

Marshall Dennehey Warner Coleman & Goggin, PC, attorneys for appellant (Walter F. Kawalec, III, on the briefs).

Kotlar, Hernandez & Cohen, LLC, attorneys for respondent (Timothy P. Search, on the brief).

PER CURIAM

Respondent Aluminum Shapes appeals from a May 14, 2018 Division of Workers' Compensation order granting petitioner Arvind Bhut medical and temporary disability benefits of $15,583.54, as well as $300 in costs. After reviewing the record and applicable legal principles, we affirm.

In 2014, petitioner was hired by respondent as a technician to fix manufacturing equipment at its plant. In 2017, petitioner injured his shoulder at respondent's facility during his shift. Petitioner filed an employee claim petition with the Division of Workers' Compensation against respondent, and subsequently filed a motion for medical and temporary disability benefits. Because the manner in which petitioner was injured was disputed, an evidentiary hearing was conducted. We recite the salient evidence adduced during that hearing.

Petitioner testified as follows. On May 21, 2017, he entered an employee locker room, where co-worker John Stevens was sitting with his feet up on a bench. Petitioner twice asked Stevens to move his legs so petitioner could pass by, but Stevens refused. Petitioner jumped over Stevens's legs but petitioner's feet "caught" Stevens's leg as petitioner did so. Stevens became angry and threw a cup of soda at petitioner. To calm himself down, petitioner left the room.

A-4652-17T1

Minutes later, petitioner decided to return to the locker room because he needed to wash his hands. However, he encountered Stevens outside of the locker room in a narrow walkway only four to six feet wide. Stevens was holding a pizza box and, when petitioner attempted to pass him, Stevens "pushed" the pizza box at petitioner. To keep the box away from him, petitioner swung his arm toward Stevens and, in doing so, hit a hat Stevens was wearing. Stevens reacted by throwing petitioner to the floor, injuring petitioner's shoulder. Petitioner testified that he was not trying to strike Stevens when he swung at him.

Stevens testified that his feet were on a bench when petitioner entered the locker room. Petitioner did not ask Stevens to remove his feet from the bench but, instead, petitioner pushed and kicked them off the bench. Moments later, Stevens stood up and petitioner stepped in front of him, causing Stevens to spill Coke on petitioner. The "conversation" between them became "heated" and two other co-workers separated them. Petitioner left the room and, minutes later, Stevens also left the room, holding a box in his hand. Stevens saw petitioner walking toward him. Stevens's description of the ensuing events was as follows:

> I'm holding onto this box, and I get to him and he's still coming at me and he's like – I don't know what to do, and I just kind of side-stepped with this box around him, to let him go, and the next thing I'm hit in the back

A-4652-17T1

of the head. . . . I grab[bed] his arm and we kind of bounce[d] off of that locker and we land[ed] on the floor . . . . I ended up on top of him. I don't – I don't know if we bounced off of two cabinets or what, but we're on the floor and I got his arm, and I'm standing up and Kevin grabs me and pulls me off of him, and Zac – I believe it was Zac had Arvind, and everything got separated.

Stevens specifically denied pushing the box at petitioner just before Stevens was hit on the back of the head.

At the conclusion of the hearing, the judge of compensation issued an oral decision from the bench and, after respondent filed a notice of appeal, issued a written decision pursuant to Rule 2:5-1(b). In the latter decision, the judge found there was a causal connection between the subject incident and petitioner and Stevens's employment with respondent. The judge stated:

> In the instant case the altercation between [petitioner and Stevens] occurred within the period of employment and at a place the employee may reasonably be to wit: the foreman's locker room and while they were reasonably fulfilling the duties of their employment or doing something incidental thereto to wit: eating lunch. I therefore find a causal connection between the altercation and petitioner[']s employment.
>
> . . . .
>
> In the instant case I find that the work of the participants brought them together and created the relations and conditions which resulted in the clash. The record before the [c]ourt is devoid of any contact

4

between Stevens and the [p]etitioner outside their place of employment.

. . . .

[T]he instant case[] is devoid of any personal nonwork animus between the petitioner and Mr. Stevens.

The judge specifically determined that neither petitioner nor Stevens had a willful intent to injure the other. In her oral decision, she stated, "[t]he reactions of both Mr. Stevens and the petitioner were in response to what each felt was aggressive behavior." In her written decision, the judge also noted that petitioner was credible when he testified he did not intend to strike Stevens when he pushed the pizza box away from himself. Concluding petitioner's injury arose out of and during the course of his employment, the judge entered an order on May 14, 2018 directing that respondent pay petitioner's medical expenses and temporary disability benefits in the amount of $15,583.54, as well as costs of $300.

On appeal, respondent primarily contends the judge's factual findings are not supported by the record. Respondent's interpretation of the facts is that petitioner intentionally struck Stevens on the back of the head. Thus, respondent argues, because petitioner's injury was the result of his aggression, he is not

entitled to benefits under the Workers' Compensation Act, N.J.S.A. 34:15-1 to -146.

We give substantial deference to the factual determinations of workers' compensation courts, limiting our review to "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). "Deference must be accorded the factual findings and legal determinations made by the Judge of Compensation unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)).

In accordance with N.J.S.A. 34:15-7, an employee may be eligible for workers' compensation benefits if injured in an "accident arising out of and in the course of employment . . . ." "[T]o trigger coverage under workers' compensation there must be a causal connection between the accident and the employment." Mule v. N.J. Mfrs. Ins. Co., 356 N.J. Super. 389, 397 (App. Div. 2003). "An accident arises 'in the course of' employment when it occurs (a)

within the period of the employment and (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment, or doing something incidental thereto." Crotty v. Driver Harris Co., 49 N.J. Super. 60, 69 (App. Div. 1958).

Guided by these legal principles, we affirm substantially for the reasons stated by the judge of compensation, whose decision was supported by sufficient credible evidence on the record as a whole. R. 2:11-3(e)(1)(D). We add only the following comments.

The judge of compensation found as fact that neither petitioner nor Stevens intended to hurt the other when they encountered each other outside of the locker room. Stevens's and petitioner's actions were merely self-protective. Petitioner swung his arm toward Stevens because he believed Stevens was pushing the pizza box into him, and Stevens grabbed petitioner's arm because he believed petitioner intended to hurt him. As the judge succinctly stated, "[t]he reactions of both Mr. Stevens and the petitioner were in response to what each felt was aggressive behavior." Because petitioner was injured as a result of an accident that arose out of and in the course of his employment, his injury is compensable under the Workers' Compensation Act. See N.J.S.A. 34:15-1.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7